IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KANDICE L.K. KAGAWA, | ) | CIVIL NO. 11-00075 SOM/KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANTS' |
| vs. | ) | MOTION TO DISMISS |
| | ) | |
| FIRST HAWAIIAN BANK/BANCWEST CORPORATION, as a domestic profit corporation; VIVIAN ADAMS, in her official capacity as Senior Vice President, Human Resources Division, for FIRST HAWAIIAN BANK; BARBARA NITTA, in her official capacity as Vice President, Human Resources Division, for FIRST HAWAIIAN BANK; ELIZA YOUNG, in her official capacity as Manager of the Credit Services Center, for FIRST HAWAIIAN BANK; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE UNINCORPORATED ORGANIZATIONS 1-10; and DOE GOVERNMENTAL AGENCIES 1-10, | ) | |
| Defendants. | ) | |

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS

I.      INTRODUCTION.

First Hawaiian Bank ("Bank") terminated longtime employee Kandice Kagawa in March 2009 following a series of events that originated in a conversation between Kagawa and another employee at a bus stop after work. Kagawa has sued the Bank and three individuals, Vivian Adams, Barbara Nitta, and

Eliza Young (collectively, the "Individual Defendants"), alleging disability discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 ("ADA"), religious and gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 ("ADEA"), and intentional infliction of emotional distress.  Compl. ¶¶ 101-15, Exh. A to ECF No. 1.  Defendants move to dismiss Kagawa's disability, gender, and age discrimination claims against the Bank, as well as claims against the Individual Defendants.  The court now grants the motion in part, dismissing the Individual Defendants as well as Kagawa's gender and age discrimination claims against the Bank.  However, concluding that Kagawa adequately alleges a claim for disability discrimination against the Bank, the court declines to dismiss that claim.

II.      RELEVANT FACTUAL BACKGROUND.

Kagawa alleges that she was hired by the Bank in 1989 and became a Senior Credit Analyst in the Bank's Credit Services Center Department in 2002.  Compl. ¶ 14.  Kagawa also apparently headed the "vehicle industry team" for a period of time.  See Compl. ¶ 41.  She is 45 years old.  Compl. ¶ 15.

Kagawa alleges that she is a mystic and hears God's voice directly.  Compl. ¶ 16.  For many years she led a prayer

group consisting of other Bank employees, a group she alleges the Bank alternately accepted and criticized. Compl. ¶¶ 18-39.

Kagawa alleges that, in January 2008, "a much younger and less experienced" male employee was selected to replace her as head of the vehicle industry team. Compl. ¶¶ 41-44.

Kagawa alleges that, the following year, she had a dream in which God told her that another Bank employee had romantic feelings for her. On March 9, 2009, she told the employee about her dream when she saw him at a bus stop after work. Compl. ¶¶ 45-46. She says that, back at work, she was informed by Defendant Young (a manager) and another supervisor that the other employee felt harassed by Kagawa's comments. Compl. ¶ 48. Kagawa met with the other employee and the two supervisors, allegedly to "tell her side of the story." Compl. ¶¶ 51-53. The other employee asked to leave the meeting and was excused. Compl. ¶¶ 54, 58. The following day, on March 12, 2009, Young met with Kagawa. Compl. ¶¶ 60-65. Young allegedly directed Kagawa to have no contact with the other employee, told Kagawa "that her actions during the meeting of March 11, 2009 were threatening to [the two supervisors]," and ordered Kagawa to seek counseling within ten days, under threat of termination. Compl. ¶¶ 60-61, 65. Kagawa says she received a formal counseling sheet containing notes written by her manager, but she did not have time to read it that day. Compl. ¶¶ 66, 79, 87.

Later that day, Defendants Adams and Nitta, of the Bank's Human Resources Department, met with Kagawa. Compl. ¶¶ 68-79. Kagawa alleges that Adams and Nitta asked her what had happened, but Kagawa "chose not to tell them at this point because she knew everything would not be justly taken after how she had previously been dealt with by both her manager and supervisor." Compl. ¶ 69. According to Kagawa, Adams and Nitta instructed Kagawa to read the Bank's sexual harassment policies, told her to make an appointment with employee counseling services, then placed Kagawa on administrative leave. Compl. ¶¶ 72-79.

Kagawa alleges that she attended a counseling session on March 19, 2009. Compl. ¶¶ 81-83. Kagawa says the counselor had the counseling sheet that had been prepared by Kagawa's manager. Compl. ¶ 86. Following the counseling session, the counselor allegedly instructed Kagawa to see a doctor. Compl. ¶¶ 88, 90. Kagawa alleges that she refused because she was not willing to pay for the appointment. Compl. ¶¶ 90-91. The Bank terminated Kagawa on March 26, 2009. Compl. ¶¶ 93-97. While she was being fired, Kagawa was allegedly told that, "In looking at everything and based on a conversation with the counselor, we have no choice." Compl. ¶ 97 (internal alterations omitted).

Two weeks after the counseling session, Kagawa allegedly read for the first time the counseling sheet that had

4

been prepared by her manager. Compl. ¶ 87. It stated that Kagawa "hears a voice" and would do whatever the voice told her to do. Id. However, Kagawa alleges, the counseling sheet failed to explain that Kagawa believed she was a mystic and could hear God's voice. Id. Instead, Kagawa read the counseling sheet as implying that Kagawa heard "just any voice" like "some insane person." Id.

On December 10, 2009, Kagawa filed a charge alleging age, gender, disability, and religious discrimination, with the Hawaii Civil Rights Commission ("HCRC") and the Equal Employment Opportunity Commission ("EEOC"). Compl. ¶ 100. After obtaining a notice of right to sue, she filed the present action.

III.     STANDARD.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint, or a claim therein, when a claimant fails "to state a claim upon which relief can be granted." Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'  "That is, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007); see Evanns v. AT&T Corp., 229 F.3d 837, 839 (9th Cir. 2000).  To survive this challenge, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." Twombly, 550 U.S. at 555 (2007) (internal quotation marks omitted); accord Iqbal, 129 S. Ct. at 1949 ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

Under Rule 12(b)(6), the court's review is generally limited to the contents of the complaint. See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. See Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).  Conclusory allegations and unwarranted inferences, however, are insufficient to defeat a motion to dismiss. See Sanders v. Brown, 504 F.3d 903, 910 (9th

Cir. 2007); Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004).

IV.     ANALYSIS.

    A.     Kagawa Sufficiently Alleges a Claim for Disability Discrimination (Count I).

Employees may invoke the protections of the ADA against discrimination by their employer in "hiring, advancement, or discharge," among other areas. See 42 U.S.C. § 12112(a). To state a prima facie case of employment discrimination under the ADA, a plaintiff must allege that: (1) she is "disabled" pursuant to the ADA; (2) she is a qualified individual, able to perform the essential functions of the job, with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. See Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1090 (9th Cir. 2002); Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999); see also 42 U.S.C. § 12111(8)-(9) (defining "qualified individual" and "reasonable accommodation"). Defendants argue that Kagawa fails to state a plausible claim for disability discrimination because she fails to allege that she was disabled or regarded as disabled, and because she fails to allege a connection between the alleged disability and an adverse action. See Mot. at 10-13. As the court concludes that Kagawa's disability discrimination claim is not suitable for adjudication on a motion to dismiss, the court denies Defendants' motion to dismiss this claim.

The ADA defines a "disability" as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1). One is "regarded as" having an impairment "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Although "mental impairment" is not defined in the ADA, the ADA regulations recognize this phrase as including "[a]ny mental or psychological disorder, such as . . . emotional or mental illness." 29 C.F.R. § 1630.2(h)(2); Josephs v. Pac. Bell, 443 F.3d 1050, 1062-63 (9th Cir. 2006); see also Thompson v. Holy Family Hosp., 121 F.3d 537, 541 n.3 (9th Cir. 1997) ("the perception that an employee suffers from a disabling psychiatric condition would disqualify the employee from a broad range of jobs").

In Holihan v. Lucky Stores, Inc., 87 F.3d 362 (9th Cir. 1996), for example, a former employee sued his employer under the ADA, alleging that he had been terminated because he had a disability or, alternatively, because he was regarded as disabled. Id. at 365. After the employer received complaints from his coworkers regarding the plaintiff's "aberrational

behavior," the employer put the plaintiff on leave and ultimately fired him.  See id. at 366.  To support his claim that the employer regarded him as disabled, the plaintiff presented evidence that, during a meeting called to discuss the plaintiff's behavior, a manager asked the plaintiff if he was having any "problems."  Id.  At another meeting, the manager strongly encouraged the plaintiff to seek counseling.  Id.  Finally, the plaintiff presented evidence that the employer had doctors' reports that diagnosed the plaintiff with depression, anxiety, and stress.  See id.  Reversing the district court's grant of summary judgment in favor of the employer, the Ninth Circuit held that this evidence presented an issue of material fact as to whether the employer regarded the plaintiff as disabled.  Id.

This is a close case.  However, given the reasoning in Holihan--and keeping in mind that this case is merely at the pleading stage--the court concludes that Kagawa has sufficiently alleged that the Bank regarded her as disabled.  First, the Complaint alleges that the Bank ordered Kagawa to go to counseling or else be fired.  See Compl. ¶¶ 61, 65.  Second, Kagawa alleges that her manager's report, given to the counselor (assumed to be the Bank's agent for purposes of this motion), stated that Kagawa "hears a voice" and would do whatever the voice told her to do.  Compl. ¶ 87.  Kagawa alleges that this report was misleading because it failed to explain that Kagawa

9

believed she was a mystic and could hear God's voice. Id. Instead, Kagawa not unreasonably inferred, the report's implication was that Kagawa heard "just any voice" like "some insane person." Id. Third, the counselor instructed Kagawa to see a doctor, which the court understands to mean a psychiatrist or psychologist. Compl. ¶¶ 88, 90. These facts, taken together, plausibly allege that the Bank regarded Kagawa as having some kind of mental illness.

Defendants cite out-of-circuit authority for the proposition "that requiring an employee to submit to a medical or psychological evaluation does not by itself establish that an employer regards the individual as disabled." See Reply at 9 (citing caselaw from the Third, Sixth, and Eighth Circuits, as well as the Middle District of North Carolina). While it may be that an allegation about the referral to the counselor, standing alone, would not be tantamount to an allegation that the Bank regarded Kagawa as disabled, this case involves additional allegations, discussed above, that support Kagawa's claim. See Compl. ¶¶ 87, 88, 90. Cf. Holihan, 87 F.3d at 366 (counseling referral, considered in conjunction with other evidence, created genuine issue of material fact as to whether employer regarded employee as disabled).

Kagawa also sufficiently alleges that she suffered adverse employment action because of a perceived disability.

10

Specifically, Kagawa alleges that the Bank fired her shortly after she refused to see the doctor to whom the counselor had referred her, and that the Bank indicated that the termination was based on the counselor's feedback. Compl. ¶¶ 91-97. The termination plainly represents an adverse employment action. See Board of County Comm'rs v. Umbehr, 518 U.S. 668, 675 (1996); Lakeside-Scott v. Multnomah County, 556 F.3d 797, 803 (9th Cir. 2009).

To be sure, Kagawa will have to produce evidence in support of the above allegations, as well as the other elements of her prima facie case, to defeat an eventual motion for summary judgment. She will likely also have to refute the Bank's argument that there was a legitimate nondiscriminatory reason for her termination--namely, that she had allegedly threatened other employees. See Reply at 9-10. But those are issues not appropriate for resolution on a motion to dismiss. The motion is denied as to Count I.

> B. Kagawa's Claims of Gender Discrimination (Count III) and Age Discrimination (Count IV) Are Untimely.

Defendants argue that Kagawa's loss of her supervisory position to a younger, male employee in January 2008 does not give rise to a timely gender or age discrimination claim because Kagawa filed her EEOC charge more than 300 days after the alleged January 2008 discrimination took place. See Mot. at 7-10.

Kagawa does not dispute that the charge was untimely as to this event, but nevertheless argues that her gender and age discrimination claims should stand because the events surrounding her termination provide the basis of a timely claim. Opp. at 18-20. Given the state of the present record, the court does not agree.

Title VII and the ADEA both require that an aggrieved party file a charge with the EEOC within 300 days of the allegedly unlawful practice to preserve a claim for a subsequent civil suit. See 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d) (ADEA). In this case, Kagawa alleges that her demotion from her position as head of the vehicle industry team in favor of a younger, male employee occurred in January 2008, but that she did not file a charge with the HCRC and EEOC until December 2009, nearly two years later. Compl. ¶¶ 13, 41-44, 100. To the extent Kagawa's claims of gender and age discrimination stem from activity in January 2008, the EEOC charge was untimely as to those events.

To the extent Kagawa contends that the charge was timely filed based on her termination in March 2009, Opp. at 18-20, the allegations of the Complaint cannot survive Defendants' motion to dismiss. Kagawa's allegations that gender and age discrimination caused her termination lack facial plausibility. See Iqbal, 129 S. Ct. at 1949. Kagawa alleges no actions or

12

words from the Bank suggesting that she was terminated because she was a woman or because she was 45 years old. Kagawa does not allege that she discussed her gender or her age with the counselor, or that the counselor's report touched on Kagawa's gender or her age. Nor does Kagawa allege that the Bank sought to replace her with a male or a younger person. In short, nothing in the allegations surrounding Kagawa's termination puts Defendants on notice that they are being sued for gender or age discrimination. See Twombly, 550 U.S. at 555 (noting that Rule 8(a)(2)'s requirement of a short and plain statement of the claim showing that the pleader is entitled to relief is intended to give a defendant fair notice of what the claim is and the grounds on which it rests); William O. Gilley Enters. v. Atl. Richfield Co., 588 F.3d 659, 667 (9th Cir. 2009) (same).

Citing Lam v. University of Hawaii, 40 F.3d 1551 (9th Cir. 1994), Kagawa argued at the hearing that the court's conclusion represents an overly narrow view of Title VII's requirements. Kagawa argued that presence of a viable disability discrimination claim, as well as what she considers to be a previous instance of gender and age discrimination in 2008, should suffice to sustain a gender and age discrimination claim based on her termination. This argument is unpersuasive.

In Lam, the district court granted partial summary judgment in favor of the defendant employer on an Asian woman

13

employee's race and gender discrimination claims based on, <u>inter alia</u>, evidence that the employer had favorably considered both an Asian man and a white woman for the position sought by the employee. <u>Id.</u> at 1561. The Ninth Circuit reversed. <u>Id.</u> at 1554-55. Instead of viewing race and sex bias independently, the court held, "it is necessary to determine whether the employer discriminates on the basis of that *combination* of factors." <u>Id.</u> In other words, just because the defendant was interested in a white man and an Asian woman did not mean the defendant could not have harbored prejudice against Asian women. <u>See</u> <u>id.</u>

Nothing in <u>Lam</u> supports Kagawa's assertion that she does not need to allege facts supporting a timely gender and age discrimination claim to survive a motion to dismiss. Indeed, the Ninth Circuit stressed the importance of examining *evidence of discrimination* on the basis of multiple factors when a plaintiff brings a claim for a combination form of discrimination. <u>See</u> <u>id.</u> at 1562. The <u>Lam</u> court described in detail the various pieces of evidence offered by the employee in support of her claim that the employer had discriminated against her based on her race and gender, including discriminatory comments and actions taken by a member of the employer's hiring committee, as well as the employer's decision to vest near total control over hiring in that committee. <u>See</u> <u>id.</u> at 1555-57, 1560. Here, by contrast, Kagawa's claim of discrimination in her termination based on

14

gender and age is supported by no factual allegation at all, and allowing the claims to go forward without such allegations would render the pleading requirements for Title VII claims meaningless. Lam does not require such a result.

        C.    <u>The Individual Defendants Are Dismissed.</u>

As discussed at the hearing, Kagawa has agreed to dismiss Adams, Nitta, and Young from the suit. <u>See</u> ECF No. 21 (minutes of hearing). There being no opposition to dismissal, the Individual Defendants are dismissed from this lawsuit.

V.        <u>CONCLUSION.</u>

For the reasons set forth above, the court GRANTS Defendants' motion to dismiss Count III, for gender discrimination, and Count IV, for age discrimination. The court grants the motion with leave to amend Counts III and IV, but leaves to the magistrate judge the decision of whether to permit amendment in the form of the proposed Amended Complaint that was filed with Kagawa's Motion for Leave of Court to Amend Complaint Pursuant to Fed. R. Civ. P. 15(a)(2). <u>See</u> ECF No. 19 (filed April 22, 2011). The court additionally DISMISSES, without prejudice, Individual Defendants Vivian Adams, Barbara Nitta, and Eliza Young. Finally, the court DENIES Defendants' motion to dismiss Count I, for disability discrimination.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 4, 2011



　　　　　　　　　　　/s/ Susan Oki Mollway
　　　　　　　　　　　Susan Oki Mollway
　　　　　　　　　　　Chief United States District Judge

Kagawa v. First Hawaiian Bank/Bancwest Corp.; Civil No. 11-00075 SOM/KSC; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS